Ch. J. Barrv
delivered the opinion of the Court.
IN March 1816, Jeremiah Pate filed his bill in the circuit court, against the heirs and devisees of Richard and James Barbour, for the conveyance of 200 acres of land, and to enjoin the proceedings in an action of ejectment, instituted by them against him for the recovery of the land. The complainant alleges that he had previously purchased and settled on the land under a claim of William Withers, of 500 acres; that h'e afterwards found the better title was in the representatives of Richard and James Barbour; that, to secure bis possession, he obtained from the defendant, Thomas Barbour, who acted as agent for the legatees of James Barbour, a written memorandum to the following effect:
“ When it is ascertained if my claim should hold the land which Mr. Jeremiah Pate now lives on, I will let him have two hundred acres of the land, provided he will not defend, but will rest his claim on the determination of the suit against Squire Withers, for which I will make a deed of general warranty,” Signed by Thomas Barbour, agent for the legatees, of James Bar-hour.
That, under this agreement, he paid Thomas Bar-hour $350, with an understanding that interest was to be allowed until a title was made; and to secure the repayment of the money, if Withers’ claim should prove the best, he took a bond with security, to the following effect:
“This shall oblige us, our fieirs,&e. to pay unto Jeremiah Pate, his heirs or assigns, on or before the first day of May next, the full and just sum of three hundred and fifty dollars, with interest from the date.” Signed by Thomas Barbour, Nathaniel P. Taylor and James T. Barbour.
It is further stated, that Thomas Barbour caused the land to be laid otl to the complainant, and that he had authority to seU. He is called on to exhibit his power, and, with the other defendants, required to set forth the title, and the interest that each respectively *6 claims. The bill prajs that the defendants he corapei-to convey the land, and for general relief.
T. Barbour’s answer.
, T'roufe.
Thomas Barbour’s answer admits the execution of the writing and note set forth in the bill; but denies that he sold the land to the complainant, as charged; states that the ‡350 were advanced as a loan, and not as part consideration for the land; that the complainant, when subsequently applied to, to close the contract for the latsd, refused. The answer further states, in response to the bill, that the 80® acres were patented to Richard Barbour, devised by him- to his brothers, James, Ambrose and Thomas, and hrother-in-law, Benjamin Johnson; that Thomas Carneal; was entitled to one half, as locator; that,, in a. division, the- lower half han falten to him, the part on which, the complainant lived; that said James was the father of the defendant,. Thomas, and only entitled to a fourth of the upper half; that ho died intestate, leaving nine children; that the defendant had a written power to act- for the heirs, when he contracted with the complainant; hut.being advised that as it was only executed, by the husbands of the females, it was invalid, he declined, acting further under it.
The answer insists that the complainant had violatcd the agreement between them, by defending the ejectment and asserting Withers’ claim against that of the Barbours.
It is in proof, that the defendant did agree to sell the Jand on the terms expressed in the written memorandum, and that the $350 dollars were paid in part consideration, with an understanding that the defendant was to pay interest on it until he made the complainant a title; that the land was surveyed and laid off as charged, it ia also in proof, that in 1814, the defendant, Thomas, called on the complainant, and'insisted on his closing the contract for the land, slating to him that he was ready on his part, and apprising the complainant that if he refused, he would sell the land to. others. The witness advised the complainant to. ac-. cede to the proposal; hut he declined, stating as a reason, that the defendant was not able to make him-a, Ü-. tie, it also appears from the evidence, tha.tthe complainant, after filing his bill, caused himself fo be made-defendant to the ejectment, set up (he claim of Withers, and resisted the recovery under Barbour's claim., *7 ll further appears, that in November 1815, the defen-jnnt, Thomas, caused the interest 4f Jame&$3arbour’s heirs in said 800 acres of land to be, sold uns'er an execution in his favor,, that issued against said'^irs from the Jefferson circuit court; that it was purchased by James Young, for $602, and the price paid over to the defendant.
Decree of the circuitcouri‘
Decree can„ notberender-tp^oof ofCorrpsp0n(l-fug allegation tho bill,
That cov&-nanlc° t0 tho1" owners, with-execution in his favor to b® levied on to a stranger, is n° ground for for the price.
In such case, “fnt]yCn mistaken in & pearingonto part, the pn«> chase money and interest. °"coverod.b°
*7 The court below dismissed the bill as to all the de-iendants, except Thomas Barbour; but enjoined the issuing of the habere facias possessionem on the judgment in ejectment. They decreed the defendant, Thomas, to pay .§350, with interest from 16th December 1810, until paid; also, the further sum of §202, jyith interest from the 6th of 1816 until with costs.
*The ground assumed for decreeing to the complain-tint the §202 with interest, was, that the defendant, Thomas, had been benefited to that amount by the sale under the execution from the Jefferson circuit court, the land he had contracted to convey to the complainant. The bill has no allegation to authorise this of the decree, nor does the proof warrant it. The land was purchased by a stranger, and the amount paid for it went in part satisfaction of a just demand of the defendant.
It being ascertained that Barbour had not the legal title, and that he was unable to convey the land, if the complainant had shown himself entitled to a specific ecution of his contract, in a case like this, where fraud Is neither charged nor proved, the complainant would only be entitled to recover the purchase money and interest.
. After-dismissing the bill as to the defendants in whom the legal title is, it might well be questioned, whether, under the general prayer for relief, the chancellor could longer entertain jurisdiction of the cause; but it is not necessary to decide this point, as the complainant has, by his own acts, barred the door to relief in equity. It will be conceded, that the defendant, although not authorised as the agent of James Barbour’s legatees, in which character he acted, is yet individually bound by his contract. The inquiry then is, has the plainant performed the conditions on his part? The defendant was, by the terms of the contract, to let the complainant have the two hundred acres of land at two dollars per acre, provided the complainant would not
tu a bid on such case for iormanocfaiKt -cnenil relief against the x:ovenantor a"en°tnV&ythe owners themselves, if it ' pfainant°had not performed conditions his ntu-t^has legal remedy, and no fraud-tíonV-feur part, bill will fV’wanTof jurisdiction0
Specific performance forced4 of a”" contract in which one Od.°nlyiS
Mándate.
Crittenden and Bibb, for plaintiff; B. Hardin, for defendant-.
defend against Barbour’s claim, but rest on the deter-ruination of the suit against Withers. The complainant so understood the contract. In his bill he alleges* “ that in pursuance of said article or memorandum, he never had defended his said purchase frbm Withers* reb'ing upon the purchase from the defendant;” and again, he insists that he should be relieved from costs* “ as he is prohibited by his contradi with Barbour, from defending under Withers’ title.” Yet, .before filing hill* 'the complainant, when called on, refuses to dose -the contract for the land, because Barbour was unable to make him a title to it; and after the bill was filed, the complainant, whilst the suit isyet progressing, makes himself defendant to the action of ejectment, and sets up the claim of Withers in opposition to that of Barbour. The rule is well settled, in executory contracts, that if the party praying relief, has not performed the stipulations on his part, chancery will not aid him, unless under peculiar circumstances, where the ruIes°ftbe common law would not afford ample redress,
.There is another view to be taken of this case, that can leave no doubt on the mind of the chancellor. It is •aPParent from the contract stated, and the allegations of the bill, that the complainant, at the execution of the contract, came under no obligation to purchase the ^anc^‘ harbour could not have sustained a bill to comPe' him to do. so. It is a rule of equity, that to enable either party to compel a specific execution, the con» tract must be mutually binding on each. Newiand on Contracts, 154; Boucher vs. Vanbuskirk, 2 Marsh. 346. Ihe present case, the complainant has a plain and adequate remedy at law, by suit on the bond for the $350 with interest, against Thomas Barbour and his ^Pities.
Th.a>t part of the decree of the circuit court which suspends the writ of habere facias possessionem upon the judgment in ejectment, is presumed to have been inadvertently entered, as it is incompatible with the principles of the decree of the circuit court, and not justified by any proof in the cause.
The decree must be reversed with costs, and the cause remanded, with directions to dismiss the complainant’s bill with costs, but without prejudice to any remedy he may have at law.